IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 1:25-cr-00123-CNS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ISHMAEL PETTY,

    Defendant.

---

### ISHMAEL PETTY'S REPLY IN SUPPORT OF MOTION FOR TRANSFER TO A LOCAL DETENTION FACILITY

---

Ishmael Petty, through counsel, respectfully submits this reply in support of his Motion for Transfer to a Local Detention Facility (Doc. 31). As indicated in his motion and further elaborated herein, Mr. Petty requests an evidentiary hearing on this motion.

**I.    The Government Misrepresents the Court's Authority Over Placement of an Inmate Awaiting Trial on New Charges**

The government's blanket statement that Mr. Petty's "post-conviction location of imprisonment is not reviewable by the district court," (ECF No. 41 at 2) misstates the law and ignores the fact that Mr. Petty is both a convicted inmate *and* a pretrial detainee for purposes of this pending capital case.

The authority cited by the government does not suggest the Court lacks authority to review and direct placement of a federal inmate who is facing new charges. Section 3621(b) says nothing about the place of pretrial detention for BOP prisoners who now face new pending criminal charges. Similarly, the only case cited by the government,

1

*United States v. Leland*, 840 F.Supp.2d 401, 403 (D. Maine 2012), is distinguishable as the prisoner in that case was not facing new criminal charges.

Strong policy reasons underly the distinction between the Court's authority over an inmate facing new charges as opposed to one who is simply serving a sentence. An inmate who has been committed to the BOP to serve his sentence often does not have an ongoing need to consult with counsel. In fact, many sentenced inmates no longer have an attorney appointed for them at all as they are past any appeal or post-conviction relief. Appeals are limited to the pre-existing record so even those inmates who are still pursuing legal action have less need to consult directly with their attorneys.

On the other hand, an inmate who faces new charges has an ongoing need to the assistance of counsel, as required by the Sixth Amendment. A pretrial inmate—even one already serving another sentence—must be afforded the opportunity to review discovery and discuss avenues of investigation with their attorney to assist in their defense. They must have access to all of the information necessary to make important decisions such as whether to take a plea. Their legal team needs ready access to the defendant for purposes of developing mitigation information.

The Sixth Amendment right to effective assistance of counsel differentiates Mr. Petty from other inmates serving sentences in the BOP and grants this Court the authority to direct how and where Mr. Petty is housed while these charges are pending. Other courts facing similar circumstances have ordered clients moved to different facilities to accommodate the need to consult with counsel. For instance, Henry Michael Houston and Wayne Bridgewater were federally indicted in the Central District of California for as many as 12 alleged murders occurring within BOP facilities. Case No.

2

02-cr-00938-DOC (C.D. Cal.). Both men had been designated by the BOP to the ADX based, presumably, on the BOP's determination that their security risk necessitated such placement. Nonetheless, the trial court required that Houston and Bridgewater be housed in a local detention facility, the Santa Ana jail, during a substantial portion of pretrial proceedings, as well as the trial and sentencing.[1]

If, as the government suggests, a trial court lacks authority to review the housing assignment of a sentenced inmate—regardless of the fact they face new charges—then the BOP could choose to house Mr. Petty at a facility in Hawaii or Puerto Rico and that decision would be unreviewable by this Court. Such argument ignores Mr. Petty's Sixth Amendment right to assistance of counsel, which he unqualifiedly retains despite having previously been convicted of other offenses.

II.   **The Government Asserts Factual Conclusions Without Factual Support Yet Suggests No Evidentiary Hearing is Necessary.**

Throughout its response, the government disputes the facts that Mr. Petty alleges he will establish at an evidentiary hearing, makes bold factual assertions in support of its argument that only Range 13 at the ADX can safely house Mr. Petty, and criticizes the defense for failing to make a sufficient factual showing. (ECF No. 41.) These fact-driven arguments, which the government fails to support with any evidence, show an evidentiary hearing is appropriate.

---

[1] Though the docket is unclear as to when exactly Houston and Bridgewater were moved from the ADX to the Santa Ana jail, it is clear that this occurred no later than November of 2006. At docket entry 4206, a minute order dated November 30, 2006, articulates a procedure for attorney and other visitation of Houston and Bridgewater at the Santa Ana jail. The trial appears to have begun on March 12, 2007, and continued for several months (Doc. 4631). Therefore, Houston and Bridgewater were housed at the Santa Ana jail—a state-run pretrial facility—for at least four months before trial began, and then throughout lengthy trial proceedings.

The government claims "BOP has determined that it cannot safely move Mr. Petty to be housed at a lower security facility in Englewood. Doing so would place staff, inmates, and others, in serious physical danger." (ECF No. 41 at 3.) No evidentiary support for this contention is provided; the government expects the Court to simply take its word. The Court should require the government to prove this assertion through live testimony, subject to cross-examination. Multiple other BOP prisoners accused of serious violence including murders in prisons have been—and currently are being—securely housed at Englewood. (ECF No. 31 at 14.) Other inmates accused of prison murders—such as Bridgewater and Houston—have been housed in pretrial facilities run by local authorities.

The government claims FDC/FCI-Englewood is "low security" and inappropriate for housing Mr. Petty (ECF No. 41 at 1), and that Mr. Petty can only safely be housed on Range 13 at ADX (ECF No. 41 at 7). Again, no evidence is presented in support of these conclusions. FCI-Englewood contains a highly secure Special Housing Unit (SHU).[2] Other high-profile detainees accused of serious violent crimes—including Timothy McVeigh and Terry Nichols—have been housed at FCI-Englewood during their trial proceedings. *See* "2 Bombing Suspects Are Moved to a Federal Prison in Colorado," https://www.deseret.com/1996/3/31/19233857/2-bombing-suspects-are-moved-to-a-federal-prison-in-colorado/ (March 31, 1996) (describing how McVeigh and Nichols were moved from Oklahoma to FCI-Englewood). Moreover, other inmates have

---

[2] Indication of FDC/FCI Englewood's SHU are also apparent in BOP documents, i.e. Institution Supplement ENG 5267.09c(1) (May 24, 2021) (discussing visiting regulations at Englewood, and references the SHU), available at https://www.bop.gov/locations/institutions/eng/eng_visit.pdf?v=1.0.0.

committed violent offenses while in BOP custody and not been subjected to conditions like Range 13 for any period, much less the 7 years Mr. Petty has been tortured there. Before this Court can rely on such a factual claim, the BOP should be required to present actual evidence explaining why inmates such as Bridgewater and Houston—who were charged with facilitating 12 murders while in BOP custody—can be safely housed in a local jail setting but Mr. Petty can only be managed on Range 13. Mr. Petty should have the right to cross-examine witnesses presenting such factual claims and conclusions in testimony, and present evidence on his own behalf.

The government asserts that Mr. Petty's "housing at ADX is in no way manipulative, and his location is related to the legitimate governmental purpose of prisoner and staff safety." (*Id*. at 9.) But whether something is related to a legitimate governmental purpose is a determination for the Court; not the Executive Branch. The government suggests this Court should simply take its word that housing Mr. Petty on Range 13 for more than seven years is "is no way manipulative." That this Court should not question whether Mr. Petty's housing assignment could be punitive or designed to serve some purpose other than safety.

The BOP has repeatedly retaliated against Mr. Petty during his confinement on Range 13. Guards have opened the door to the outside during freezing cold temperatures. They have utilized the two-way audio system to taunt him. They have left his lights on all night, forcing him to sleep in his shower stall. They have subjected him to near daily intrusive full-body cavity searches when he has no interaction with others or way to obtain contraband. At minimum, the law demands that the government

present evidence in support of its position that Mr. Petty's assignment to Range 13 is "in no way manipulative" so the Court can draw its own conclusions.

The government disputes Mr. Petty's assertion that the distance to ADX, restrictions on visitation, and inflexibility regarding communication with his attorneys undermine his right to effective assistance of counsel. This too is an area where an evidentiary hearing is necessary before the Court can judge which facts to accept or not. At an evidentiary hearing, Mr. Petty could present evidence on his conditions of confinement, including how those conditions interfere with his ability to assist counsel with his defense. As discussed in the motion, if Mr. Petty were housed at FDC/FCI Englewood, his counsel would be able to visit him same-day to address issues and update Mr. Petty on important developments. While he's at ADX, the physical distance and limitations on visitation, make such same-day consultations impossible. Typically, even an emergency legal visit request takes a week to arrange at the ADX. It will be impossible for Mr. Petty to receive constitutional access to counsel under these circumstances.

The government both faults the defense for failing to provide examples of how Mr. Petty's confinement on Range 13 has degraded his mental health and interfered with his ability to participate in his defense *and* urges the Court that no evidentiary hearing is necessary. (ECF No. 41 at 7.) How exactly is the defense supposed to make the showing the government argues is necessary without such hearing? Mr. Petty is under constant surveillance on Range 13. His cell is monitored by video cameras, two-way audio devices, and even night-vision cameras. Every day, he is subjected to intrusive searches of his body cavities.

6

Contrary to the government's contention, Mr. Petty has already provided authority showing that long solitary confinement causes mental and physical harms. These wide-ranging symptoms, including anxiety, paranoia, and myriad other symptoms of long-term isolation, which might make it impossible for Mr. Petty to meaningfully consult with counsel and participate in his defense. *See* Craig Haney, *Mental Health Issues in Long-Term Solitary and "Supermax" Confinement*, 49 Crime & Delinquency 124, 130 (2003). The record could be further developed at an evidentiary hearing.

Respectfully submitted this 23rd day of May, 2025.

        *s/ Patrick J. Burke*
        Patrick J. Burke, #4943
        Patrick J. Burke, P.C.
        303 16th Street, Suite 200
        Denver, Colorado 80202
        303-825-3050
        Patrick-j-burke@msn.com

        David G. Maxted, #52300
        Maxted Law LLC
        1543 Champa Street, Suite 400
        Denver, Colorado 80202
        720-717-0877
        Dave@maxtedlaw.com

        Jamie Hubbard, #48552
        Stimson LaBranche Hubbard, LLC
        1652 Downing Street
        Denver, Colorado 80218
        720-689-8909
        Hubbard@slhlegal.com

        **Attorneys for Ishmael Petty**

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2025, I electronically filed the foregoing **ISHMAEL PETTY'S REPLY IN SUPPORT OF MOTION FOR TRANSFER TO A LOCAL DETENTION FACILITY** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record in this matter.

*s/ Jennifer J. Feldman*
Jennifer J. Feldman