IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Criminal Case No. 1:25-cr-00123-CNS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ISHMAEL PETTY,

    Defendant.

# ORDER

Before the Court is Defendant Ishmael Petty's Motion for Transfer to a Local Detention Facility. ECF No. 31. For the following reasons, the Court DENIES Mr. Petty's motion. In doing so, the Court presumes the parties' familiarity with this criminal case's factual and procedural background, and the background of Mr. Petty's prior criminal cases. The Court also denies Mr. Petty's request for an evidentiary hearing on his motion, *see id.* at 1, as there are no serious factual disputes regarding the issues Mr. Petty's motion poses, and such a hearing would not materially assist the Court's resolution of Mr. Petty's motion.

## I.    ANALYSIS

The parties' arguments are easily summarized. Mr. Petty seeks transfer from the Bureau of Prison's (BOP's) Administrative Maximum Facility (ADX), approximately two hours from Denver, Colorado, to the Federal Detention Center—Correctional Institution—Englewood (FCI Englewood), which is much closer to Denver. The government says this

transfer is improper. *Compare* ECF No. 31 at 1, *with* ECF No. 41 at 1. The Court agrees with the government that transfer of Mr. Petty to FCI Englewood is improper.

Mr. Petty devotes much of his transfer motion to articulating descriptive legal principles, or directing the Court to legal authority dealing generally with capital cases:

- "Death is different;"

- "[T]he American Bar Association has special standards for the qualifications and performance of defense counsel;"

- "Studies demonstrate that solitary confinement can cause anxiety, panic, rage, loss of control, paranoia, hallucinations, and self-mutilations, among many other symptoms;" and

- "A defendant facing a possible death sentence must be afforded an opportunity to present evidence of good behavior in prison."

*See* ECF No. 31 at 4–13 (quotations and alterations omitted). The Court is mindful of these principles and authorities. But they provide limited support for Mr. Petty's primary arguments, chiefly:

- "The BOP's continued indefinite confinement of Mr. Petty on Range 13 at ADX negatively affects his attorney-client relationship" and ability to meaningfully participate in his defense;

- Mr. Petty's confinement makes "visiting Mr. Petty at the ADX even more burdensome;"

- Confinement at ADX is "degrading" Mr. Petty's mental health;

- "The government should not be permitted to build its case for future dangerousness through restrictive pretrial confinement;" and

- "Placement at FCI Englewood protects Mr. Petty's constitutional interests without sacrificing any security concerns."

2

ECF No. 31 at 8–12 (quotations and capitalization omitted).

This is particularly true when the Court considers Mr. Petty's arguments against this case's factual background. As the government observes and Mr. Petty acknowledges, Mr. Petty is detained at ADX following his prior conviction of several violent federal criminal offenses—he is not simply in pre-trial detainment in this criminal case, without any prior convictions. *See* ECF No. 41 at 4; ECF No. 74 at 1; ECF No. 31 at 14. Thus, the BOP, not the Court, is empowered to order Mr. Petty's transfer. *See also* 18 U.S.C. § 3621(b); *United States v. Stone*, No. 1:17-CR-100, 2025 WL 509441, at *1 (E.D. Tex. Feb. 14, 2025) (explaining "BOP is solely responsible for determining an inmate's place of incarceration" and collecting cases); *United States v. Edwards*, No. 1:23-CR-62, 2024 WL 4647713, at *1 (E.D. Tex. Oct. 30, 2024) (same); *United States v. Craig*, No. 5:23-cr-00129, 2024 WL 3553864, at *3 (S.D.W. Va. July 26, 2024) ("[T]he BOP possesses plenary authority under 18 U.S.C. § 3621(b) to designate [defendant's] place of imprisonment. The Court thus lacks the ability to stop [defendant's] impending transfer to ADX[.]"). And contrary to Mr. Petty's argument, § 3621(b)'s silence regarding pre-trial detainment for individuals previously convicted of federal criminal offenses does not support Mr. Petty's transfer, given its clear instruction the BOP, not the Court, is empowered to order an individual's transfer in light of his prior convictions. *Compare* ECF No. 74 at 1, *with Stone*, 2025 WL 509441, at *1. For this same reason, Mr. Petty's "policy reasons" in support of transfer fail to persuade. ECF No. 74 at 2.

The Court could deny Mr. Petty's motion on this basis alone. But the government persuades that Mr. Petty's transfer arguments, and the facts and authorities he marshals in support of them, must be balanced against the security risks he poses. *See* ECF No.

3

41 at 8. Accordingly, even if this was a circumstance where the Court was not bound by § 3621(b)—i.e., if Mr. Petty was a pre-trial detainee—the Court agrees with the government he is not "a mere pretrial detainee." ECF No. 41 at 8. In 2002, Mr. Petty pleaded guilty to second degree murder under 18 U.S.C. § 1111 for the murder of a fellow inmate while incarcerated at a federal prison, United States Penitentiary, Pollock, in Louisiana, and was sentenced to life imprisonment. *See United States v. Petty*, 1:02-cr-10006-FAL-JDK, ECF No. 23. In 2015, Mr. Petty's last federal case in this judicial district, he was found guilty under 18 U.S.C. § 111(a)(1) and (b) for the violent assault of three staff members at ADX. *United States v. Petty,* 1:15-cr-00029-PAB, ECF No. 63. As Mr. Petty said himself at his sentencing hearing in his last federal case in this judicial district:

> I mean, you don't put body armor on and get a knife and make mace because you are going to assault someone. You do that because you are planning on killing someone, and that's what was going to happen that morning if she would have showed up . . . . It went from simple assault and it quickly developed into a murder, attempted murder . . . . I am not just out there on the range being reckless. I know what I am doing. And it's not something that I was conscious of. It's just instinct. I have done this so many times being locked up in a prison, but it had normally been done against other inmates . . . . And that's why I say I was undercharged in this case. And I believe I deserve another life sentence, but if not, I don't deserve anything less than 720 months. So I agree with the U.S. Attorney 100 percent because that's what it was turned into, Your Honor. *I know how to kill someone in prison*. I was convicted of that . . . . [T]his was an attempt[ed] murder and I was undercharged in that case. And for that I do agree . . . I deserve the maximum.

*United States v. Petty,* 1:15-cr-00029-PAB, ECF No. 76 at 33–41 (emphasis added). Thus, and given ADX is located in this judicial district, cases Mr. Petty cites in support of transfer are plainly distinguishable. *Cf.* ECF No. 31 at 11; *United States v. Lopez*, 327 F. Supp. 2d 138, 143 (D.P.R. 2004) ("The [government] has proffered *no evidence* and has

4

simply relied on *the assumption* that inmates facing the death penalty are inherently more prone to disrupt the orderly running of the institution if they remain in the general population since they are more likely to take a hostage, hurt a staff member, another inmate, or themselves. This presumption ignores the fact that [the defendant] resided in the general population for over ten (10) months *without causing such disruption or taking any hostages*, nor has such incident ever taken place . . . .") (emphases added); *United States v. Barclay*, 442 F. Supp. 3d 1312, 1316 (D. Idaho 2020) ("The problem of housing pretrial detainees *outside of the judicial district where they face charges* is not new.") (emphasis added).

The fact that Mr. Petty was convicted of federal criminal offenses and *made these statements himself* at the sentencing hearing regarding those offenses further underscores why, as indicated above, it is unnecessary for the Court to exercise its discretion and hold an evidentiary hearing on Mr. Petty's transfer motion. Mr. Petty argues the government fails to provide "factual support" for its arguments, ECF No. 74 at 3, and the Court should be presented with "actual evidence why . . . Mr. Petty can only be managed" at ADX, *id.* at 5, and that therefore an evidentiary hearing regarding transfer is appropriate. But given Mr. Petty's own statements, which do provide factual support for the government's arguments against transfer, *see* ECF No. 41 at 7–8, there is no "dispute of fact warranting" the Court's exercise of its discretion to not conduct "an evidentiary hearing" on Mr. Petty's transfer motion, *United States v. Corrales*, 483 F. App'x 527, 533 n.5 (10th Cir. 2012) (quotations omitted).

## II. CONCLUSION

Consistent with the above analysis, Defendant Ishmael Petty's Motion for Transfer to a Local Detention Facility, ECF No. 31, is DENIED.

DATED this 2nd day of June 2025.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge